IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULA WOODLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 05 C 0548 |
| v. | ) |
| | ) |
| RGB GROUP, INC., | ) HONORABLE DAVID H. COAR |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before this Court is Defendant's Motion for Summary Judgment, which is fully briefed and ripe for decision.

**I.    FACTS**

The following facts are taken from the parties' statements of undisputed material fact and are taken as true. Plaintiff Paula Woodley ("Woodley") is a corporate nurse with over twenty-five years' experience. Defendant RGB Group, Inc. ("RGB Group") is a Florida corporation, with its principal place of business in Miami, Florida. RGB Group is a health care management company that contracts with the federal government to provide health care professionals as staff to federal agencies, including Federal Occupational Health ("FOH"). FOH is a federal agency within the Department of Health and Human Services. FOH provides clinical services for limited health care services and an Employee Assistance Program ("EAP") for federal employees at health units in federal buildings around the country. One such FOH site was the Everett

McKinley Dirksen Building ("the Dirksen Building"), 219 South Dearborn Street in Chicago, Illinois.

Woodley was employed as a nurse coordinator in the health unit at the Dirksen Building from 1998 to 2004. She was first hired by a government contractor called OMV, which held a contract to provide health care staff to the Dirksen Building health unit. In or around 2002, RGB Group won the contract to provide health care staff to the Dirksen Building. As is apparently customary, Woodley remained at the Dirksen Building site, although her employer changed to the RGB Group as of approximately April 1, 2002. RGB Group provided an employee manual to Woodley as of March 17, 2002, which stated that all RGB Group employees were "at-will" employees, and that their employment could be terminated with or without cause at any time by either the employer or the employee. Woodley's immediate supervisor at the health unit was Kathy Sarkauskas, RGB Program Manager. Sarkauskas reported to Barry Hill, RGB Group's Contract Representative, and also communicated with Peg Ryan, FOH's Patient Coordinator.

Shortly after RGB Group took over the contract for the Dirksen Building health unit, additional federal contracts were assigned to the unit. Woodley reported that she was responsible for conducting physical exams for Department of Defense personnel, including members of the armed services who were on the verge of overseas deployment. In addition, she provided services to several other government agencies and the Peace Corps. The clinic did not have a doctor on staff but rather shared doctor time with the health unit in the Metcalfe Building, approximately half a block away. Woodley contended that the volume of patients after the RGB Group took over the FOH contract was too great for her to handle without additional staff and a doctor.

When Woodley started in the Dirksen Building health unit, an EAP counselor used one of the offices in the health unit to see EAP clients. The EAP counselor was also an employee of a non-governmental contractor. Sometime in 2002 or 2003, Magellan Health Services took over as the EAP provider vendor. Lois Kenyon Severson, a Magellan employee, became the EAP counselor for the Dirksen Building clinic. The Dirksen Building health unit's hours were from 8:00 a.m. to 4:30 p.m. Sometimes, however, EAP clients had appointments after 4:30 p.m. and Kenyon Severson asked Woodley to leave the health unit door unlocked so the clients could get in.

Woodley became concerned that the health unit was not properly locked and secured after it closed at 4:30 p.m. and that EAP clients or their family members had unauthorized and unmonitored access to the clinic and the federal building after hours. The regular court security officers go off duty at 6:00 p.m., when the Dirksen Building closes to the public. In late 2003 or early 2004, Woodley told Jeff Mornar, the General Services Administration ("GSA") supervisory property manager for the Dirksen Building, that the EAP counselor was seeing clients after hours. Mornar spoke to Doug Mahy, Kenyon Severson's supervisor, about the unwritten building procedure which required staff to escort building visitors out of the building after hours. Mornar also spoke with Kenyon Severson, who advised him that she saw clients as late as 5:45 p.m. but escorted them out of the clinic to the building lobby at the conclusion of their appointments.

Woodley continued to report her concerns that EAP clients had unsupervised access to the health unit and to the rest of the Dirksen Building over an eight month period. She sent emails to her supervisor, Kathy Sarkauskas. She also spoke with Robert Vrandecic, deputy

-3-

United States Marshal in the Dirksen Building. Woodley contacted Mornar on subsequent occasions with her concerns about access to the health unit and the building.

At the same time, the work climate at the Dirksen Building health unit deteriorated. A nurse, Anne Jackson, who worked directly for the federal government, came to the clinic and took over one of the doctor's offices as her workspace.[1] This was unusual. Government nurses and contractor nurses usually did not share space because of conflict of interest issues. Jackson and Woodley clashed on several occasions, as did Kenyon Severson and Woodley.

RGB Group and Sarkauskas assigned relief nurses to the Dirksen Building health unit as back up for Woodley or to cover when Woodley was on vacation. In April or May 2004, while Woodley was on vacation, relief nurses complained to Sarkauskas that Woodley had given them an invalid voice mail password and they were unable to retrieve the clinic's voice mail messages, could not locate medical items in the clinic, and did not know where to find other items. Sarkaukas reported the relief nurses' complaints to Barry Hill. At Hill's suggestion, Sarkauskas investigated the complaints and, at Peg Ryan's request, noted her findings at the health unit on a Quality Assurance form used for clinic auditing purposes. Sarkauskas found that the nurse relief folder, which contained instructions for relief nurses about policies and procedures, had not been updated as required and that the health unit's emergency box contained expired medications.

On April 28, 2004, Hill informed Woodley that she was being transferred to a different health unit while the complaints and issues in the Dirksen Building unit could be investigated. Woodley told Lou Rose, Human Resources director for the United States Bankruptcy Court for

---

[1] The Dirksen Building health unit had at least one doctor's office, but there was no doctor assigned to the health unit on a daily basis.

-4-

the Northern District of Illinois, and several court security officers about her transfer shortly thereafter. The following day, Ryan forwarded an email to both Hill and Sarkauskas that indicated that three judges in the Dirksen Building were lobbying to keep Woodley at the health unit. Ryan then emailed Hill and Sarkauskas that she and Dr. Mark Delowery, the director of clinical services for FOH, had decided to keep Woodley at the unit under a written corrective action/performance improvement plan. Hill called Woodley and directed her not to communicate directly with FOH clients, including court staff, but rather to follow RGB Group's chain of command for reporting problems and concerns about her work site. Hill also informed Woodley that she would be receiving a written reprimand letter, reiterating the items discussed in the telephone call.

On May 4, 2004, Hill sent Woodley a letter via Federal Express overnight service with the subject "Employee Performance – Written Reprimand," which advised her that her performance in following the proper chain of command, relating to her fellow team members, and discussing personnel issues with FOH clients required immediate improvement. At 9:57 a.m. on May 4, Woodley sent an email to Sarkauskas with the subject line "FOH Clinic Hours. The email, which included a notation that it was a "final memo," repeated Woodley's concerns that Kenyon Severson was leaving the Dirksen Building health unit unlocked after working hours to see clients, and that this compromised the safety and security of the health unit, its medical records, and the personnel in the Dirksen Building generally. Woodley forwarded the email to Jeff Mornar at 10:14 a.m., seventeen minutes after sending it to Sarkauskas, with a prefatory message stating that this was her "last and final memo on this [issue]." Mornar, in turn, forwarded the message to Doug Mahy, who forwarded it to Fran Wence at FOH, who forwarded

it to Peg Ryan and Kathy Sarkauskas on May 5, 2004. Peg Ryan forwarded the email to Barry Hill, with all the forwarding headers included. Hill then telephoned Woodley on May 5 to confirm that she had received the written reprimand letter; he told her that her services were being evaluated and that she had 48 hours to respond to the written reprimand.

Woodley sent a letter to Hill on May 7, 2004, which Hill received on May 10, 2004, refusing to sign the reprimand letter and informing Hill that she would be retaining legal counsel. Hill met with Roberto Bravo, president of RGB Group, on May 10, 2004, to discuss Woodley's employment. After reviewing Woodley's personnel file, Bravo instructed Hill to terminate Woodley effective May 14, 2004. Bravo submitted an affidavit stating that he based his decision on Woodley's personnel file, including negative performance reviews and multiple incidents of violating RGB Group policy by reporting problems or concerns outside the chain of command, problems with appropriate professional conduct, and adherence to standards, policies, and procedures; her refusal to sign the written reprimand; and what he perceived as her unwillingness to improve her conduct and performance. Accordingly, Bravo sent a termination letter dated May 14, 2004 to Woodley via overnight mail, which stated that her employment was being terminated, effective immediately, for "constantly ignoring policies, procedures, and directives from [RGB Group]" and "violat[ing] our company Standards of Conduct as described in our Employee Manual." Woodley received the letter on Saturday, May 15, 2004.

## II. STANDARD OF REVIEW

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of

law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001). "If, however, the record as a whole 'could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Id.* Once a motion for summary judgment has been filed, "the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial." *Liu v. T&H Machine, Inc.*, 191 F.2d 790, 796 (7th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-movant must provide more than a "mere scintilla" of evidence to carry its burden under the summary judgment standard. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, weighing evidence, making credibility determinations, and drawing reasonable inferences are functions of a jury, not of a judge deciding a summary judgment motion. *Id.* at 255.

### III. ANALYSIS

RGB Group seeks summary judgment on both Woodley's retaliatory discharge and her Illinois Whistleblower Act claims.

#### A. Jurisdiction

Woodley brought this complaint in Illinois state court. RGB Group then removed it to federal court because there is diversity of citizenship. 28 U.S.C. §§ 1332 & 1441. Cases where jurisdiction is based on diversity of citizenship may not be removed from state court unless the amount in controversy is more than $75,000 on the date of removal. *See BEM I v. Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002) (citing *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.

1992)(per curiam); *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 573 (6th Cir.2001); *Journal Publishing Co. v. General Casualty Co.*, 210 F.2d 202, 204-05 (9th Cir.1954)). The complaint does not contain an *ad damnum* giving a specific damages amount, which courts typically can rely on to determine the amount in controversy. *See Rising-Moore v. Red Roof Inns*, 435 F.3d 813, 815 (7th Cir. 2006). In her complaint, Woodley seeks reinstatement and back pay, compensatory and punitive damages, fees and costs, and other appropriate equitable relief. Plaintiff filed the complaint in state court on November 18, 2004; Defendant received the summons and complaint on January 3, 2005. RGB Group filed its notice of removal on January 31, 2005. RGB Group contends that Woodley seeks more than $75,000. Defendant's counsel faxed a letter to Plaintiff's counsel on January 19, 2005, notifying Woodley of RGB Group's intent to remove, and asking Plaintiff's counsel to "confirm that the relief sought by [Plaintiff's] complaint exceeds the $75,000 jurisdictional amount necessary for purposes of removal to federal court." (Def.'s Not. Of Removal, Ex. B.) Defendant also offers an affidavit by Roberto Bravo, president of RGB Group, stating that it is his "good faith belief" that Woodley's complaint seeks in excess of $75,000 in damages. Neither party has indicated that Plaintiff disagrees with Defendant's assessment of the amount in controversy. In any event, the amount of damages sought in the complaint, assuming plaintiff names a specific figure, is not dispositive; the question is the amount of damages actually at stake. A plaintiff alleging a violation of either section 10 or section 20 of the Illinois Whistleblower Act, 740 ILCS 174 *et seq.*, can recover compensation for damages suffered, including reasonable litigation costs and attorney's fees, in addition to reinstatement and back pay. 740 ILCS 174/30 (2004). This Court therefore finds that the amount in controversy requirement is satisfied.

B.      **Retaliatory Discharge**

In Count I of her Complaint, Woodley claims she was discharged in retaliation for "reporting violations of federal security rules and regulations and refusing to participate in such ongoing violations." She also contends that "[s]uch discharge is against the clear mandate of public policy." (Compl. at ¶ 65.) In Illinois, an employer may discharge an at-will employee, such as Woodley, for any reason or for no reason at all. *See, e.g., Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981). To succeed on a claim for retaliatory discharge under Illinois law, a plaintiff must show: 1) she was discharged; 2) in retaliation for her activities; and 3) the discharge contravened a clearly mandated public policy. *Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812, 813 (7th Cir. 2003) (citing *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 911 (Ill. 1988)); *see also Stebbings v. Univ. of Chicago*, 726 N.E. 2d 1136, 1140 (Ill. App. Ct. 2000). RGB Group unquestionably discharged Woodley. The parties disagree, however, on whether the second two elements of the tort are present.

RGB Group contends that it discharged Woodley because of poor job performance over a period of time and her apparent unwillingness to improve her conduct. Woodley argues that RGB Group retaliated against her because she took her concerns about the security of the health unit and the Dirksen Building personnel to individuals outside the RGB Group chain of command. Furthermore, she contends that RGB Group added false performance reviews to her personnel file after she was terminated in order to conceal the fact that they retaliated against her.[2] The record does not contain a complete copy of the employee manual, so this Court is

---

[2] Woodley's reliance on deposition testimony from Greg Rose, an assistant property manager with the General Services Administration, and a letter from Chief Judge Charles P. Kocoras, of the United States District Court for the Northern District of Illinois to demonstrate

unable to determine what the policy about chain of command stated, or whether it was written at all. According to Woodley, Barry Hill admitted in his deposition that she was terminated in retaliation for going outside the chain of command with her concerns about security. But Woodley reads Hill's deposition extremely selectively. In fact, he stated that RGB Group terminated her for multiple reasons, including repeated instances of going outside the chain of command and bringing her complaints to client agencies. But Hill stated that Woodley's performance problems and apparent unwillingness to improve were also reasons for her termination. The explanation Defendant gives of its reason for terminating Plaintiff is not so clearly stated or convincing as to support summary judgment. Indeed, given the condensed time period during which Hill sent Woodley the written reprimand, Woodley sent her building security email to Sarkauskas and Mornar, and Hill and Bravo met and decided to terminate Woodley, it would not be unreasonable for a finder of fact to determine that RGB Group did retaliate against Woodley. This Court expresses no opinion about the likelihood of such a finding. Thus, summary judgment is denied as to Woodley's retaliatory discharge claim.

### C. Illinois Whistleblower Act

The Illinois Whistleblower Act prevents an employer from retaliating against an employee who disclosed information to a government or law enforcement agency. 740 ILCS 174/1 *et seq*. In her complaint, Woodley contends that she was terminated "in retaliation for

---

that Defendant's reason for terminating her was pretextual is misplaced. The fact that Rose and Judge Kocoras stated that they thought Woodley was a "good nurse" does not demonstrate as a matter of law that RGB Group impermissibly retaliated against her. Neither Judge Kocoras nor Rose were Woodley's supervisors or employed by RGB Group. Their opinions are just that: opinions, no matter how "prominent" their positions. Their opinions certainly do not "demonstrate[] that Defendant's assertion that Woodley had performance problems is pretextual," as Woodley asserts.

reporting safety and security violations of federal rules and regulations, in violation of the Whistleblower Act." She goes on to situate her claim in Section 20 of the Act, which provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule or regulation." 740 ILCS 174/20 (2004). According to Woodley, she refused to violate or participate in a violation of federal regulations governing "the safety and security of a federal courthouse," and was fired for her pains. (Compl. at ¶ 67.)

In her response to RGB Group's motion for summary judgment, Woodley cites Sections 10 and 15 of the Whistleblower Act, as the substantive provisions her discharge violated. The Whistleblower Act does not create a private cause of action under Section 10, however; only sections 15 and 20 do that. 740 ILCS 174/30 (2004) ("[i]f an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer for all relief necessary to make the employee whole"). Any claim arising under Section 10 is therefore dismissed. Section 15 provides that an employer "may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15 (2004). The Whistleblower Act went into effect in 2004 and the Illinois courts – both state and federal – have addressed it only sparingly. *See, e.g., Smith v. Madison Mut. Ins. Co.*, 2005 WL 1460301 (S.D. Ill. Jun. 21, 2005); *Sutherland v. Norfolk S. Ry. Co.*, 826 N.E.2d 1021 (Ill. App. Ct. 2005). The Illinois Supreme Court has yet to construe Section 15 at all.

The dispositive question is whether Woodley had "reasonable cause" to believe that the information she disclosed to GSA and FOH employees related to "a violation of State or federal law, rule or regulation." 740 ILCS 174/15. She argues that she thought Kenyon Severson's practice of seeing EAP clients after the health unit closed at 4:30 violated a federal regulation pertaining to the security of federal properties. 41 C.F.R. § 102-74.375(c). The regulation requires *federal agencies* to ensure that admission to federal property is restricted to authorized and registered persons when the property is closed to the public. "A person" found guilty of violating the regulation shall be fined or imprisoned for up to 30 days or both. 41 C.F.R. § 104-74.450. Woodley's argument, which is rather convoluted, appears to be that RGB Group did not respond as she wanted them to when she reported her concerns about the health unit being open after hours. She then took her concerns outside the chain of command, which violated RGB Group policy. She was discharged and one of the reasons RGB Group gave for her termination was that she failed to follow the chain of command to report concerns. Woodley thus concluded that she was discharged for being a whistleblower. Woodley also testified at her deposition that both Sarkauskas and Hill threatened her with termination if she continued to act as "whistleblower." Hill and Sarkauskas contradict Woodley's account of events in their own depositions and affidavits. This represents a classic dispute of material fact. Credibility determinations are uniquely the province of the finder of fact, and not suitable for resolution at the summary judgment stage. Summary judgment is therefore denied as to Woodley's remaining Whistleblower Act claim.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **June 13, 2006**